IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVEN L. AUXTER, | ) CASE NO. 1:10 CV 228 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| | ) |
| MORGAN STANLEY | ) |
| SMITH BARNEY LLC, | ) |
| | ) **MEMORANDUM OPINION** |
| Defendant. | ) |

This matter is before the Court on Plaintiff, Steven L. Auxter's Motion to Remand. (Docket #8.) Mr. Auxter originally filed his Complaint against Defendant Morgan Stanley Smith Barney LLC ("MSSB") on January 27, 2010, in the Cuyahoga County Court of Common Pleas, Case No. CV 10 716764.

### Factual and Procedural History

On December 29, 2009, Mr. Auxter's employment with MSSB, a financial services and investment planning firm, was terminated. Complaint at ¶ 4. When a registered employee of a registered securities broker dealer is terminated, the broker dealer must file a "Form U-5" within 30 days, explaining the reason for termination. Complaint at ¶ 22. At the time of his termination, Mr. Auxter was advised in writing that MSSB intended to report the reason for his termination as "Discretionary trading in certain client accounts without written authorization."

Complaint at ¶ 21.

Mr. Auxter disputes any of the alleged wrongdoing and in his Complaint alleges that a Form U-5 including the above language would be both false and defamatory. In Count I, Mr. Auxter requests both declaratory and injunctive relief. Mr. Auxter seeks a declaration that he did not engage in discretionary or unauthorized trading as alleged by MSSB; that the Court enjoin MSSB from filing the Form U-5 containing any false and/or defamatory language; and, that the Court enjoin MSSB from reporting a termination or discharge for engaging in unauthorized trading or discretionary trading without consent. In Count II, Mr. Auxter sets forth a claim for wrongful discharge. In Count III, Mr. Auxter sets forth a claim for defamation and interference with contractual and business relations.

On February 2, 2010, Defendant MSSB filed a Notice of Removal with this Court. (Docket #1.) MSSB asserts that this action may properly be removed pursuant to 28 U.S.C. § 1441, stating that this Court has original diversity jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a) because complete diversity of citizenship exists between the parties and the alleged amount in controversy exceeds $75,000.

On February 9, 2009, Mr. Auxter filed his Motion to Remand for Lack of Subject Matter Jurisdiction. (Docket #8.) Mr. Auxter argues that MSSB has failed to appropriately establish complete diversity. Specifically, Mr. Auxter asserts that the "total activity" test should be applied to determine a corporation's principal place of business for purposes of diversity jurisdiction. Under the "total activity" test, Mr. Auxter argues that "the place where the principal office is located is not necessarily the place where the principal business is carried on." See Motion to Remand at p. 4 (quoting *Gafford v. General Electric Co.*, 997 F.2d 150, 163 (6th Cir.

1993). Mr. Auxter states that evidence regarding MSSB's organization and headquarters is insufficient to establish that MSSB is not a citizen of Ohio. In addition, Mr. Auxter argues that MSSB has failed to establish a sufficient amount in controversy, stating that Mr. Auxter has not yet sustained the damages that are alleged in the Complaint because a Form U-5 has not yet been filed. Mr. Auxter states that if MSSB files a Form U-5 that conforms to Mr. Auxter's version of the facts, 'there can be no 'damage.'" Therefore, any attempt to calculate damages is premature.

Finally, Mr. Auxter argues that MSSB has not established the existence of federal question jurisdiction pursuant to 28 U.S.C. § 1331. Specifically, Mr. Auxter states the temporary restraining order sought does not prevent MSSB from complying with its duties under federal securities law and that Mr. Auxter's reference in the Complaint to MSSB's conduct violating "state and federal law" is not sufficient to invoke federal question jurisdiction.

On February 16, 2010, Defendant MSSB filed its Brief in Opposition to Mr. Auxter's Motion to Remand. (Docket #16.) Defendants state that as a limited liability company, the citizenship of MSSB is determined by the citizenship of its members – in this case two corporations, Morgan Stanley and Citigroup Global Markets Inc. MSSB states that Morgan Stanley is a Delaware corporation headquartered at 1585 Broadway, New York, New York and is, therefore, a citizen of Delaware and New York. MSSB states that CGMI is a Delaware corporation, headquartered at 388 Greenwich Street, New York, New York and is, thus, also a citizen of both Delaware and New York. Defendants state that neither Morgan Stanley or CGMI are citizens of Ohio. Accordingly, MSSB asserts that it likewise is a citizen of both Delaware and New York, not Ohio. See *Gafford v. General Elec. Co.*, 997 F.2d 150, 163 (6th Cir. 1993); *Clear Channel Communs., Inc. v. Citigroup Global Mkts., Inc.*, 541 F. Supp. 2d 874, 877 (W.D.

Tex. 2008).

## Discussion

A.  **Diversity Jurisdiction.**

28 U.S.C. § 1441 provides that an action is removable only if it could have been brought initially in federal court. A federal court has original "diversity' jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a). Relative to the citizenship of corporations, the federal diversity statute provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

The citizenship of a limited liability company is determined by the citizenship of its members. *Delay v. Rosenthal Collins Group, Inc.*, 585 F.3d 1003, 1005 (6th Cir. 2009). A corporation is a citizen of the state in which it is incorporated and the state in which it has a principal place of business. *Gafford v. General Elec. Co.*, 997 F.2d 150, 163 (6th Cir. 1993). A corporation has only one principal place of business. *Id.* Thus, if the members of a limited liability company are corporations, the Court must look to the state of incorporation and principal place of business of each of the corporate members.

On February 23, 2010, recognizing the necessity of having a clear rule for determining a corporation's principal place of business for purposes of diversity jurisdiction analysis, the United States Supreme Court adopted the "nerve center" test, concluding as follows:

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place

-4-

> where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings. . . .

*Hertz Corp. v. Friend*, 2010 U.S. LEXIS 1897, at *28-29 (Feb. 23, 2010).

The citizenship of MSSB, a limited liability company, is determined by the citizenship of its members – in this case two corporations, Morgan Stanley and Citigroup Global Markets Inc. Morgan Stanley is a Delaware corporation headquartered at 1585 Broadway, New York, New York and is, therefore, a citizen of Delaware and New York. CGMI is a Delaware corporation, headquartered at 388 Greenwich Street, New York, New York and is, thus, also a citizen of both Delaware and New York. In applying the "nerve center" approach adopted by the Supreme Court in *Hertz*, the Court finds that the principal places of business of both Morgan Stanley and CGMI, the member corporations of Defendant MSSB, are in New York, New York, where the corporate headquarters of both are located. While Defendant MSSB maintains an office in Cleveland, Ohio, from which Mr. Auxter worked, the "nerve centers" of the corporate members of Defendant MSSB, both of which are undeniably large and complex in nature, are clearly their corporate headquarters. As stated by the Court in *Hertz*, the "nerve center" approach "points courts in a single direction, towards the center of overall direction, control and coordination." *Id.* at *33-34.

In addition to the foregoing, the Court finds the amount in controversy in this matter to be sufficient to satisfy jurisdictional requirements. As plainly stated in his Complaint, "Mr. Auxter prays for: (A) injunctive relief to prevent irreparable injury, loss or harm; (B) an award of compensatory and consequential damages in excess of $25,000 upon proof at trial; (C) an award of punitive damages in an amount to be proven at trial; and (D) an award of attorneys' fees and

costs." Mr. Auxter alleges that he has a portfolio of approximately $40,000,000 and that MSSB's alleged tortious interference and defamation put his entire portfolio at risk and will destroy his career. (Complaint at ¶¶ 5, 26, and 46-49.) The Court finds that on the face of the Complaint, the amount in controversy exceeds $75,000.

B.  **Federal Question Jurisdiction.**

While the allegations raised by Mr. Auxter appear to involve questions of federal law, implicating federal securities regulation created by the Securities Exchange Act, the Securities Exchange Commission, and the Financial Industry Regulatory Authority, the Court does not find it necessary to address the arguments raised relative to federal question jurisdiction, as the requirements for diversity jurisdiction have been satisfied.

## Conclusion

Based upon a through review of the Complaint in this case, as well as the Motion for Remand filed by Mr. Auxter and the Brief in Opposition filed by Defendant, this Court finds remand to be inappropriate. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Accordingly, Mr. Auxter's Motion to Remand (Docket #8) is hereby DENIED.

IT IS SO ORDERED.

_Donald C. Nugent_
DONALD C. NUGENT
United States District Judge

DATED: March 4, 2010